UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE APPLICATION OF PJSC URALKALI FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782. | CASE NO. C18-1673JLR<br><br>ORDER GRANTING APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782 |

## I.  INTRODUCTION

Before the court is Petitioner PJSC Uralkali's ("Uralkali") application pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding. (Appl. (Dkt. # 1); Mem. (Dkt. # 1-1).) Respondent John E. McCaw, Jr. opposes Uralkali's application. (Resp. (Dkt. # 16).) Uralkali filed a reply. (Reply (Dkt. # 20).) The court has considered the application, the parties' submissions concerning the application, the relevant portions

//
//
//

of the record, and the applicable law. Being fully advised,[1] the court GRANTS Uralkali's application for the reasons set forth below.

## II. BACKGROUND

This matter arises out of foreign proceedings related to Uralkali's unsuccessful bid to acquire a Formula One racing team. (*See* Mem. at 2-4.) Uralkali is a public joint stock company based in Russia. (Lloyd Decl. (Dkt. # 1-3) ¶ 4.) In July 2018, Force India Formula One Team Limited ("Force India"), a Formula One racing team, entered administration, the English equivalent of bankruptcy. (Mem. at 3.) Shortly thereafter, Uralkali learned that Force India's administrators—Geoffrey Rowley and Jason Baker (collectively, "the Administrators")—were accepting bids for the acquisition of Force India. (*Id.*) On August 3, 2018, Uralkali submitted an offer to acquire Force India. (*Id.*) Three days later, at the request of the Administrators, Uralkali submitted a modified offer. (*Id.*)

Uralkali's bid was unsuccessful. (*Id.*) On August 7, 2018, the Administrators declared Racing Point (UK) Limited ("Racing Point") the winning bidder. (Resp. at 2-3.) Racing Point's bid was funded by a consortium led by Lawrence Stroll, a Canadian businessperson, and comprising several investors, including Mr. McCaw, a businessperson who resides in Seattle, Washington ("the Stroll Consortium"). (Mem. at 3-4; Resp. at 2-3.) Uralkali later learned that the Stroll Consortium purchased Force

---

[1] No party requests oral argument (*see generally* Pet.; Mem.; Resp.), and the court has determined that oral argument would not be of assistance in deciding the application, *see* Local Rules W.D. Wash. LCR 7(b)(4).

India's assets for less than what Uralkali had proposed in its modified offer, "le[ading] Uralkali to believe that the Stroll Consortium was given an unfair advantage in the bid process." (Lloyd Decl. ¶ 11.)

In September 2018, Uralkali filed an action against the Administrators ("the English Action") in the High Court of Justice, Business and Property Courts of England and Wales ("the English Court"). (*See id.* ¶ 2, Ex. A ("Particulars of Claim").) In brief, Uralkali alleges that the Administrators made material misrepresentations during the bid process and negligently administered the bid process. (Particulars of Claim ¶¶ 4, 6, 40-45, 51, 55-59.) The Administrators deny Uralkali's allegations. (Fisher Decl. (Dkt. # 17) ¶ 3, Ex. B ("Defence").) Among other defenses, the Administrators assert that Racing Point won the bid process because Uralkali failed to make "any reasonably viable proposal" to acquire Force India. (Defence ¶ 2.9.)

Uralkali petitions the court to authorize a subpoena to compel Mr. McCaw to produce certain documents and oral testimony for use in the English Action. (Mem. at 1, 5.) Uralkali contends that Mr. McCaw, as a member of the Stroll Consortium, "can provide documents and testimony concerning the Stroll Consortium's strategy for participating in the bid process," including "any attempts to attain undue favor or advantage at any point in the bid process" and "communications among members of the Stroll Consortium concerning Uralkali and its bids." (*Id.* at 5.) Mr. McCaw opposes Uralkali's application. He calls the application "a classic fishing expedition" (Resp. at 2) and asserts that he has "no knowledge of Mr. Stroll's or Racing Point's bidding strategy or any communications between the Administrators and either Mr. Stroll, Racing Point,

Racing Point's advisors or anyone else associated with the winning bid" (McCaw Decl. (Dkt. # 17-1) ¶ 5).

In late 2018, Uralkali filed a similar application under § 1782 in the Southern District of New York. (Taft Decl. (Dkt. # 22) ¶¶ 3-4.) Uralkali sought an order directing another member of the Stroll Consortium, John Idol, to produce documents and provide deposition testimony related to the English Action. (*Id.*) In opposing Uralkali's application, Mr. Idol asserted—just as Mr. McCaw does here—that he had "no knowledge of Mr. Stroll's or Racing Point's bidding process or any communications between the Administrators and Mr. Stroll, Racing Point, their advisors or anyone else associated with the winning bid." (*Id.* ¶ 5 (quotation marks omitted).) The Honorable Edgardo Ramos, United States District Judge, granted Uralkali's application. (*Id.* ¶ 8, Ex. B ("S.D.N.Y. Order") at 4.)

The court now considers Uralkali's application.

### III. ANALYSIS

**A.  Service**

At the outset, the court addresses Mr. McCaw's argument that the court should dismiss Uralkali's application for failure to comply with the court's order directing service on Mr. McCaw. (Resp. at 11-12.) On October 24, 2018, the court ordered Uralkali to effect service on Mr. McCaw within 21 days and file proof of service within seven days of doing so. (10/24/18 Order (Dkt. # 8) at 1.) The court stated that it would dismiss Uralkali's application if Uralkali failed to comply with the order. (*Id.* at 1.)
//

In the days that followed, Uralkali made several attempts to serve Mr. McCaw in person at his office and his residence. (Sisk Decl. (Dkt. # 11) at 1-2 (describing attempt to serve Mr. McCaw at his residence on October 30, 2018); Torres Decl. (Dkt. # 12) at 1-2 (describing attempts to serve Mr. McCaw at his residence on October 30, October 31, November 1, and November 2, 2018); Nascimento Decl. (Dkt. # 13) at 1-2 (describing attempt to serve Mr. McCaw at his company on October 30, 2018).) On November 2, 2018, a process server left papers with a guard on duty at the gated community where Mr. McCaw lives, after the guard refused the server entry to the community. (Torres Decl. at 2.) That day, Uralklai also served Mr. McCaw at his residence by first-class mail. (Damianick Decl. (Dkt. # 9) at 1-2.) Uralkali filed proof of service 12 days later, on November 14, 2018. (*Id.*)

The court need not determine whether Uralkali properly served Mr. McCaw. Mr. McCaw does not move to dismiss Uralkali's application for insufficient service of process. (*See generally* Resp.) Nor does Mr. McCaw contest that, in effecting service by mail, Uralkali notified him of the basis of the application and the information Uralkali seeks. (*See generally id.*) Rather, Mr. McCaw appears to take issue with the fact that, after Uralkali served Mr. McCaw by mail, it "wait[ed] 12 days to file its purported proof of service in violation of the Order, leading Mr. McCaw to assume that Uralkali recognized it had not effected service on him." (*Id.* at 11; *see also id.* at 12 (stating that Uralkali's "application should be dismissed . . . for violation of the Court's October 24 Order").)

//

The court agrees that Uralkali failed to comply with the court's order that it file proof of service within seven days of serving Mr. McCaw. (*See* 10/24/18 Order at 1.) The court cautions Uralkali that its orders reflect the court's power to control the course of litigation and are not to be disregarded. Nonetheless, the court declines to dismiss Uralkali's application on these grounds. Mr. McCaw does not allege that he was prejudiced by Uralkali's failure to comply with the proof-of-service deadline. (*See generally* Resp.). Moreover, the court's strong preference for resolving issues on the merits favors adjudication of Uralkali's application. *Cf. Howes v. City of Seattle*, C07-1391RSL, 2008 WL 5071981, at *1 (W.D. Wash. Nov. 24, 2008) (denying the defendant's motion to dismiss for defects in service, despite the plaintiff's one-year delay in serving the defendant, in light of the preference for resolving issues on the merits and the absence of prejudice to the defendant). Finally, the court finds that, although Uralkali filed proof of service five days late, it substantially complied with the court's order directing service. *Cf. Anderson v. Country Mutual Ins. Co.*, C14-0048JLR, 2015 WL 11233430, at *2 (W.D. Wash. Feb. 9, 2015) (noting that substantial compliance is a defense to civil contempt for violation of a court order). Accordingly, the court proceeds to assess Uralkali's application.

**B.      Legal Standard Governing Applications under 28 U.S.C. § 1782**

Under 28 U.S.C. § 1782, a district court may order a person who resides or is found in its district to produce documents or testimony for use in a foreign legal proceeding. 28 U.S.C. § 1782(a). Section 1782 "is the product of congressional efforts . . . to provide federal-court assistance in gathering evidence for use in foreign

tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Its aims are twofold: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)) (quotation marks omitted).

As a threshold matter, an applicant under § 1782 must satisfy the following statutory prerequisites: (1) the discovery request must be made "by a foreign or international tribunal" or by "any interested party"; (2) the request must be for "testimony or [a] statement" or for the production of a "document or other thing"; (3) the evidence gathered must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person subject to the request must reside in the district of the district court where the application is pending. 28 U.S.C. § 1782(a); *Potts v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013); *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998) (formulating the *prima facie* showing in three rather than four parts).

Even if the statutory prerequisites are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Rather, a district court retains broad discretion to grant or deny a § 1782 application and to determine what discovery, if any, should be permitted. *Id.* In exercising its discretion, the court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the

discovery request is an attempt to avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id.* at 264-66.

C.  **Statutory Prerequisites**

The parties do not dispute that Uralkali satisfies § 1782(a)'s four statutory prerequisites. *See* 28 U.S.C. § 1782(a); *Potts*, 945 F. Supp. 2d at 1199. First, as the plaintiff in the foreign proceedings, Uralkali is an "interested party." 28 U.S.C. § 1782(a); (*see also* Particulars of Claim.) Second, Uralkali requests that Mr. McCaw produce certain documents and oral testimony. (Lloyd Decl. ¶ 19, Ex. B ("Subpoena").) Third, Uralklai seeks to use Mr. McCaw's testimony and any documents he produces in the English Action. (Mem. at 6-7.) Finally, Mr. McCaw maintains a residence in this district. (Hill Decl. (Dkt. # 1-2) ¶ 3; Resp. at 11.) Accordingly, the court finds that Uralkali's application satisfies § 1782(a)'s statutory requirements.

D.  **Discretionary Considerations**

Uralkali contends that all of the discretionary factors outlined in *Intel* weigh in favor of granting its application. (Mem. at 8-10.) Mr. McCaw argues that the first and fourth *Intel* factors disfavor discovery. (Resp. at 8-10.) The court analyzes each factor in turn.

    1.  <u>Participant in the Foreign Proceeding</u>

The first *Intel* factor concerns whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. A foreign tribunal can compel discovery from parties appearing before it, obviating the need for assistance from United States courts. *Id.* "In contrast, nonparticipants in the foreign proceeding may be

outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* At first glance, this factor appears to favor granting Uralkali's application because Mr. McCaw is not a party to the English Action.

As Defendants emphasize, however, courts often construe the first *Intel* factor to ask whether the material the applicant seeks is obtainable through the foreign proceeding even if held by a nonparticipant to the proceeding. *See, e.g.*, *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016) ("[C]ourts have interpreted this [factor] to focus on whether the evidence 'is available to the foreign tribunal,' because in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings.") (quoting *In re Microsoft*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006)); *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-mc-80153-MEJ, 2018 WL 368766, at *2 (N.D. Cal. Jan. 11, 2018) ("Courts have held that '[a]lthough the case law at times refers to whether the "person" is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding.'") (quoting *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015)). In *MetaLab*, for example, the court was unable to determine whether the company from which the § 1782 applicant sought discovery was a party to the foreign proceedings. *MetaLab*, 2018 WL 368766, at *2-3. Nonetheless, the court found that the first *Intel* factor weighed against granting the § 1782 application because the defendant in the foreign action had "sent or received" the

requested documents and therefore likely had them "in his possession or control." *Id.* In other words, the material the § 1782 applicant sought was available in the foreign proceeding. *Id.*

Here, Uralkali seeks documents and deposition testimony from Mr. McCaw falling roughly within four topics: (1) the Stroll Consortium's internal communications about the acquisition of Force India; (2) communications between members of the Stroll Consortium and other entities, including Force India's creditors and the Administrators, about the acquisition of Force India; (3) documents concerning the particulars of the bid process, including "any contemplated or actual arrangement[s]" between the Stroll Consortium and Force India's creditors, owners, management team, or other third parties; and (4) communications between the Stroll Consortium and Force India's owners. (Subpoena at 6-10 (delineating 10 document requests and 6 deposition topics).) For the most part, Uralkali's requests implicate the Stroll Consortium's internal communications and its communications with non-parties to the English Action. (*See id.*) With the exception of exchanges between the Stroll Consortium and the Administrators, the documents and testimony that Uralkali seeks are unlikely to be in the possession of the Administrators.[2] Mr. McCaw provides the court no reason to believe that, despite these circumstances, the English Court could or would order the production of the materials covered by the subpoena. (*See generally* Resp.; Subpoena at 6-10.)

---

[2] For example, in pleadings filed in the English Court, the Administrators expressly disclaim knowledge of Mr. Stroll's communications with Force India's owners during the bid process. (Defence ¶¶ 16.2-16.3.)

Further, the court emphasizes that an applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782. Mr. McCaw argues that the first *Intel* factor militates against permitting discovery because "Uralkali filed the Petition before seeking any discovery in the English Action." (Resp. at 8.) However, there is "nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement" of the sort Mr. McCaw proposes. *See In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (noting that an exhaustion requirement would contravene the "twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history"); *see also In re Application of Digitechnic*, No. C07-0414JCC, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) (acknowledging that there is no exhaustion requirement in § 1782). Accordingly, that Uralkali did not seek discovery in the English Action before filing this application has no bearing on the court's assessment of the first *Intel* factor.

For the foregoing reasons, the court is not persuaded that Uralkali could obtain through the foreign proceeding the testimony and documents it seeks from Mr. McCaw. The court thus concludes that the first *Intel* factor weighs in favor of granting Uralkali's application.

2. <u>Nature and Character of the Foreign Proceeding</u>

The second *Intel* factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Uralkali asserts that "[t]here is every reason to believe that the English High Court will

accept evidence obtained through Section 1782 discovery in the United States." (Mem. at 9; *see also* Lloyd Decl. ¶ 22 ("As long as it is relevant to the domestic case, English law does not contain any procedural bars on the submission or use of evidence obtained through foreign proceedings.").) Mr. McCaw does not dispute Uralkali's characterization of the English Court's receptivity to discovery obtained in the United States. (*See generally* Resp.) The court likewise presumes that the English Court would be receptive to relevant evidence Uralkali may obtain through § 1782. *See, e.g.*, *In re Fischer Advanced Composite Components AG*, C08-1512RSM, 2008 WL 5210839, at *3 (W.D. Wash. Dec. 11, 2008) (finding that the second *Intel* factor favored the § 1782 applicant because "the English court would presumably be receptive to the introduction of relevant evidence"). The second *Intel* factor favors Uralkali.

    3. <u>Whether the Petitioner Seeks to Avoid Foreign Evidence-Gathering Restrictions</u>

In assessing the third *Intel* factor, a district court should "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Mr. McCaw does not dispute Uralkali's assertion that it "is not attempting to circumvent the United Kingdom's discovery limits, as nothing under English law precludes the parties from obtaining evidence abroad." (Mem. at 10 (citing Lloyd Decl. ¶¶ 20, 22-23); *see generally* Resp.) The court finds no indication that Uralkali seeks to circumvent any evidence-gathering restrictions that may be imposed by the English Court. The third *Intel* factor thus favors Uralkali.

### 4. Whether the Discovery Request is Unduly Intrusive or Burdensome

The fourth *Intel* factor concerns whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In assessing this factor, a district court should apply the standards of Federal Rule of Civil Procedure 26. *See, e.g.*, *MetaLab*, 2018 WL 368766, at *4 (concluding that the petitioner's discovery request was overbroad under the standards of Federal Rule of Civil Procedure 26(b)(1)); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."); *see also* Fed. R. Civ. P. 26(b)(1). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Mr. McCaw argues that the discovery Uralkali seeks is largely irrelevant to the issues in the English Action and not proportional to the needs of the case. (Resp. at 9-11.) As to relevance, Mr. McCaw contends that 14 of the 16 categories of discovery that Uralkali requests "are in no way connected to the Administrators or their alleged misconduct in the Bid Process." (*Id.* at 9 (arguing that "[o]nly the first three lines of Document Request 6 and the first seven words of Deposition Topic 3" encompass relevant topics).) Mr. McCaw further asserts that he has "no knowledge" of the Administrators' conduct or representations during with the bidding process or Racing

Point's bidding strategy. (McCaw Decl. ¶¶ 4-5.) As to proportionality, Mr. McCaw argues that Uralkali's discovery request is not narrowly tailored and that the burden of the proposed discovery outweighs its likely benefit. (*Id.* at 10.)

The court finds that Uralkali seeks documents and testimony relevant to the claims and defenses asserted in the English Action. The pleadings in the English Court disclose several factual disputes implicating the Stroll Consortium, including: the circumstances that shaped Racing Point's winning bid, whether that bid had any objective chance of success, whether members of the Stroll Consortium were aware of the details of Uralkali's bids, and why the Administrators accepted the Stroll Consortium's bid. (*See* Particulars of Claim; Defence.) The topics on which Uralkali requests discovery are reasonably calculated to lead to information that may bear upon those questions. Moreover, as a matter of principle, the court is "particularly wary of denying [§ 1782] discovery on relevance grounds." *See In re Application Pursuant to 28 U.S.C. § 1782*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding it "inappropriate" to deny a § 1782 application on relevance grounds "[g]iven the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought").

The court acknowledges that Mr. McCaw disclaims knowledge of much of the information Uralkali requests. (*See* McCaw Decl. ¶¶ 4-5.) But Mr. McCaw cites, and the court finds, no authority that holds that a court should deny as irrelevant or unduly burdensome an application under § 1782 simply because its target asserts that he or she has no firsthand knowledge of the information requested. (*See generally* Resp.) In fact,

in deciding the § 1782 application that Uralkali recently filed in the Southern District of New York, Judge Ramos concluded that the requested discovery was "neither unduly intrusive nor unduly burdensome, particularly because [Mr.] Idol disclaims knowledge and possession of much of the discovery sought by Uralkali." (S.D.N.Y. Order at 3-4); *see also In re Application of Savan Magic Ltd.*, No. 2:17-cv-01689-JCM-NJK, 2017 WL 6454240, at *5 (D. Nev. Dec. 18, 2017) (finding that the fourth *Intel* factor weighed in favor of granting a § 1782 application in part because the respondent's claim that he had "no responsive documents" showed that the request was not overbroad).

Finally, the court concludes that the discovery Uralkali requests is proportional to the needs of the English Action. Uralkali seeks to compel the production of documents generated or received between January 1, 2018, and the present, and limits its requests to sixteen clearly delineated topics. (Subpoena at 6-10.) The delimited timeframe and subject matter distinguish Uralkali's application from the sort of open-ended petitions that courts have rejected as overbroad. *See, e.g.*, *MetaLab*, 2018 WL 368766, at *4 (finding that the fourth *Intel* factor was not satisfied in part because the applicant's discovery request was "not limited to a specific time frame"); *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp. 3d at 1044 (denying § 1782 application where the discovery sought was not limited to documents or information connected to the foreign proceedings and covered a span of five to 11 years). Moreover, the burden the requested discovery would impose upon Mr. McCaw is minimal, particularly in light of his representation that he lacks any responsive documents. *See, e.g.*, *Savan Magic*, 2017 WL

//

6454240, at *5. Because the discovery Uralkali seeks is relevant and proportional to the needs of the English Action, the fourth *Intel* factor favors Uralkali.

In sum, the court concludes that Uralkali satisfies the statutory prerequisites set forth at 28 U.S.C. § 1782(a). The court further concludes that all four *Intel* factors weigh in favor of granting Uralkali's application. Accordingly, the court grants Uralkali's application.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Uralkali's application pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding. (Dkt. # 1.)

Dated this 23rd day of January, 2019.

_____
The Honorable James L. Robart
U.S. District Court Judge